Senatus v. U.S. Attorney General We're just going to give a few minutes until the courtroom settles down. That's okay. Take your time. All righty. Mr. Birch? Yes, Your Honor. Good morning. Thomas Birch on behalf of Mr. Woff Senatus. Today I have two law students arguing on our behalf, Mr. Jesse Sebring and Mr. Mark Winokur, and I'll be at counsel table. Thank you, Your Honors. Thank you, Mr. Birch. We'll hear first from Mr. Sebring. Thank you, Your Honors. And may it please the Court, I am Jesse Sebring along with my co-counsel, Mark Winokur, here on behalf of Petitioner Woff Senatus. Here Mr. Senatus alleges that the board made a decision to the wrong address. Mr. Senatus, after being deported to Haiti, learned about the adverse decision one day after the deadline expired. He prepared and sent his petition within three days. It was ultimately filed eight days late. But this Court can and should toll the filing deadline. First, I'll discuss the presumption of irrevocable tolling, and then I'll have both the language and the context of this statute's support applying here. Before you get started, can I ask you a question on, is there anything in the record that shows that Mr. Senatus actually filed a change of address form with the board or with the Department of Homeland Security? No, there is no change of address form in the administrative record. Is he relying on the fact that he listed the Florida address on his motion to reopen and nothing else? No, he has told them, or he has listed it seven times, each of his Lozada documents, the signature block, and the service certificate of his motion to reopen, and in the emergency motion for reopening. And he also, he did file an affidavit under penalty of perjury where he listed some facts, but he did not in that affidavit suggest that he had filed a change of address form. Is that correct? That is correct. At the time, he was pro se deported in Haiti with no resources and not a great grasp of the language. And he's still in Haiti now. Is that correct? That is correct. Okay. And so, we believe that that can be excused here, that he did tell them multiple times, seven different times, the address that he would like them to be, them to be submitted to. And you said he was deported. He didn't self-deport. He was deported? He was deported. Before, he was a lawful permanent resident, and that is why there is prejudice here that his counsel did not challenge the crime of violence classification because he would not have been removable otherwise. But let me jump forward a little bit.  Tell us why, at the bottom line, if your client were to win on every issue up until the last one, right? Yes. Why does your client win on the last issue, which, just to be clear, is that this is not an aggravated felony? Yes. At the time, it is under the Florida law now, but that was after his conviction. He was convicted in 2021, a year before the Florida Supreme Court on certification answered that it did require specific intent. But at the time of his conviction under Florida law, many courts were expressly using a reckless mens rea. But that may be true, but two things I would say that I think you have to deal with to overcome that. One is, the district where he was convicted, that was not the law. The law, you had to, recklessness wouldn't get you over the hump. But more importantly, number two, in Summers, we said, well, when the Florida Supreme Court tells us what that law means, that's what that law has always meant. So, how do you deal with those two things? Yes. So, take the second one first. That was in the ACCA context, so you're not bound by that statement here. But also, the seven... But why would it be different? Why would a Florida criminal statute mean one thing in the context of the ACCA, but something totally different in the context of an immigration appeal? I don't think that there would be a significant difference, but you're not bound by the interpretation in that context. You're not bound by your prior statement on that. We might not be, technically, but we'd have to explain why it was different. So, explain why you think it's different. Well, I would start with that the Florida Supreme Court did not themselves do the analysis that would require it to be a retroactive holding, that that conviction was in the framework of that case. And so, even though he was convicted of that crime, it was on certification, it was still in that same matter, and so it was not being applied retroactively. Here, this would be a retroactive application of it, considering that he was convicted in a completely separate matter. And so, the Seventh Circuit has weighed in on this, and they said that the Florida Supreme Court did not do the work to make this a retroactive holding. And so, I think that the court should do likewise. That was in Anderson. But, going back to the equitable tolling issue, that there is a presumption in favor of equitable tolling that the government must do the work here to rebut the presumption. They can do it, shown as a jurisdictional requirement, but that has been foreclosed by Riley v. Bondi. So, now the government must show that there is an affirmative indication that the Congress intended to preclude equitable tolling in the language or context of the statutes. Here's a question, and I suspect your answer will be that we're not bound by this either, but in Riley, the Supreme Court said that it was deciding whether this statute was, quote, a jurisdictional requirement or simply a mandatory claim processing rule. Now, that may be dicta, but as our colleague Ed Carnes famously said, there's dicta, and there's dicta, and there's dicta, and then there's Supreme Court dicta. Wouldn't we be setting ourselves up for a pretty quick summary reversal if we decided that this was, in fact, not a mandatory rule? No. So, I think the mandatory language has kind of muddied the water. That when courts talk about the mandatory claim processing rule, they're usually saying that it's not framed in discretionary terms. However, we know that that's not the analysis on the equitable tolling question. Now, the court there specifically said that it was not getting to this because the government had waived it, but here the government has not waived it, so it is squarely before you. Well, it said it wasn't deciding the case on that basis, right? But I don't think it said we're not, we're affirmatively not looking at whether it's a mandatory claim processing rule, right? It seems like they said it could be A or B. It's not A, and the government didn't move based on B, so therefore we're rebanding it. What am I missing there? I think that's a fair reading of it, but I don't think the mandatoryness answers the question for you. That the Supreme Court has said that we go through the Irwin analysis and use that presumption that they did not discuss this presumption of irrevocable tolling, they didn't go through the legwork here, and so this is just a different issue. That this is a, the government must show the language or context of this statute rebutts the equitable tolling presumption. So, turning to the language, the statute reads that the position for review must not be filed later than 30 days after the date of the final order of removal. There's no explicit bar to removal or to the tolling provision there. And though it is a mandatory language, the Supreme Court has been routinely held that that kind of language does not rebut the presumption alone, such as in Irwin itself where every language there is very similar. And this court in Avila-Santoyo held that the motion to reopen shall be filed within 90 days was completely open to equitable tolling. What about the fact that federal rule of appellate procedure 26B2 prohibits us from extending the time to file a petition to review an order of an administrative agency unless specifically authorized by law? Yes, so that rule I don't think gives any affirmative indication that Congress intended to preclude equitable tolling, which is the analysis that we do. And there's three reasons why not. The first is that it was promulgated by the Supreme Court and not Congress. It was 23 years before Irwin, so it does not really speak on rebutting the presumption in any way. Like, Congress just did not act in the face of the presumption there. And also, under the Irwin presumption, the... Why do you think Congress did not act in the face of the presumption? Because it was 23 years before the Irwin presumption, and so the statute was reenacted six years after Irwin, and they did not include an explicit tolling bar. They have had opportunities to say that we do not want the presumption to be applied here, and so I don't think we can go to a federal rule applied 23... Adopted 23 years before the presumption was established to find the affirmative indication that they intended to preclude equitable tolling here. But the last reason also is that the Irwin presumption says that we read the equitable tolling provision into the statute. It is not something coming from the outside. This is how we read it. This is a statutory interpretation issue. And so, under FAP 26B2, it has an exception unless authorized by law. We say that this is authorized by law in light of the Irwin presumption. What about the fact that if you look at the statute itself, 22... I'm sorry, 1252, the deadline we're talking about, the petition for review must be filed not later than 30 days after the date of the final order of removal. But then if you move down to B3C, talking about the aliens brief, the court may not extend the deadlines except upon motion for good cause shown. So you've got the same statutory provision. You've got one where Congress has said, okay, we'll allow good cause to extend it, but the one we're talking about today does not have that similar language. It does not. However, in the equitable tolling context during this Irwin analysis, the Supreme Court has routinely held that the exclusio unis line of reasoning does not hold the same weight, especially whenever there is a different audience and different conduct being regulated. Is there some sort of difference between these statutes? Here, our deadline that we're dealing with today is directed at the parties themselves and not the court, while that provision is directed at the court itself. And also, that is dealing with the service and filing of briefs. We're dealing with the case originating petition that it would be, it seems odd if Congress were to say, yes, you can have delays here, but you lose your judicial review at the very beginning if 30 days hits. Also, that shows that Congress was open to equity in the statute. It shows that they care more about justice in individual cases rather than firm application of the rules. Furthermore, even exceptions in the same statute have not been sufficient to get rid of the presumption of fair and equitable tolling. And that's in Beckler and in Holland. There were specific exceptions in the statute for certain classes of victims or parties that the deadline would not apply, and still the court said that that was not sufficient to rebut the presumption. So going to a separate subsection for one exception there does not give the affirmative indication that the government must show. Furthermore, the court required unusually emphatic or highly technical language, multiple explicit exceptions, and the deadline to be repeated several times to kind of show the language. Can I ask you one more quick factual question just to make sure that I understand the record? How did Mr. Sinaitis eventually learn of this decision? Did he learn from his family? It is not clear, but that is the indication that we have. Thank you, Your Honors. All right. Thank you, Mr. Sebring, and we'll hear next from Ms. Groff. Good morning, Your Honors. It may please the court. My name is Stephanie Groff, and I represent the United States Attorney General. Your Honors, the petitioner, Mr. Sinaitis, was placed in removal proceedings after he was convicted for aggravated assault with a firearm in violation of Florida law. Before the immigration judge, he applied for relief and protection. The immigration judge denied that. The board then upheld that denial, and he was ordered removed. Then Mr. Sinaitis filed a motion to reopen, and the board ruled on that and denied it. Mr. Sinaitis then untimely filed a petition for review with this court, and this court should find that it is untimely and deny his petition for review. And that's because Mr. Sinaitis now asks this court to uphand Supreme Court precedent and the plain language of the statute in Congress's clear intent in codifying the timeliness at 1252b1. After Riley, although the 30-day filing deadline is no longer jurisdictional, as Judge Grant properly noted, it is a mandatory claims processing rule, and as such, when a party, specifically here the government, invokes it, this court must enforce it. While there is a presumption in favor of equitable tolling, this is just a presumption, and it can be rebutted. And here, with congressional intent, the plain language of the statute, federal rules of appellate procedure, it is clear that equitable tolling was not meant to be read into this time bar, and we would ask that this court deny Mr. Sinaitis's untimely petition for review. Can I ask you a question? If, just for the sake of argument, assume that we say that equitable tolling would apply, I understand that Mr. Sinaitis did not file a change of address form, but he was indicating in multiple filings what his change of address was, and just to point out the sort of big fact, the federal government had, in fact, deported him to Haiti. So isn't it somewhat of a red flag if the federal government is sending notices to him in somewhere other than Haiti? No, Your Honor. Respectfully, why the government has the UIR Form 33, which you asked my friend on the other side about, is to prevent this exact situation. It is the alien's duty to inform both the immigration judge, the board, where their address, their most recent address is, and here he never did that, my friend on the other. Here's the problem, though, that I have with that. Yes. The notice that he received, the notice of hearing that he received in immigration court that your client provided him with said, if you are released from custody within five days of your release, you must provide to this immigration court a written notice or completed Form EOIR 33 of the address and telephone at which you can be contacted. So it made it seem like you could do it, you know, you could either do it through the EOIR 33 or you could provide written notice in some other way. Let me ask you, first of all, why is that not the case? And second of all, if that is the case, why isn't it enough to provide the written notice in repeatedly filed court filings? Yes, Your Honor. We do acknowledge that the form does state it, and a synodous in his affidavit and in various filings where this court noted that he did have his change of address in the filings. However, EOIR 33, specifically with the board, allows the agency to keep track of its filings, keep track of its deadlines. It may, but that's an awful lot. I mean, you're talking about somebody was in a detention facility. Then they were deported directly from the detention facility to Haiti where they're homeless, they're on the streets. They don't have access to any kind of online anything. But they've tried to do everything they could within their power to inform you of their new address, and your notice appears to give options as to how you can do that, either through EOIR 33 or through some other written notice. Why isn't it enough to give the other form of written notice? Well, Your Honor, specifically, even assuming that that is enough, the issue here is Mr. Synodous didn't do everything he could. We noted in our briefing that he could have at any point sought the board to file a reissue notice. If they would have filed a reissue of the denial of the motion to reopen, then he could have timely appealed the petition for review. Here, in order to even get to the tolling, this court would have to ignore Stone to append what a mandatory claims processing rule is. So while there may be a challenge to him providing notice or not, the point that we're making is that it wasn't him doing everything he could because there is still that administrative remedy that's available to him that is well known that he could have asked the board, hey, I did not get proper notice, I was removed, which the government notes that this is a situation that is very common where someone is in detention, is ordered removed, and is seeking further review. And that's exactly why it's troubling, right? Because we all know that this is a very common situation. And if you all are providing affirmatively misleading notice, telling people, well, we'll send you your notice to anywhere you give us in written notice, or through the EOIR 33, and people take advantage of the written notice option, then aren't you affirmatively misleading them into losing their rights? No, Your Honor. We respectfully disagree that we're not affirmatively misleading. In fact, his proceedings were completed at this point. But, again, nonetheless, whether or not he – I guess I'm just – sorry, I'm just having trouble understanding why the written notice wasn't enough when you say that it's enough. The written notice wasn't enough specifically here if we were to even get to the point where you – this court is addressing equitable tolling. And it's not enough also because Mr. Sonatus has other options available to him. But wait, wait a second. I'm sorry. Why isn't it enough? Why isn't the written notice – let's just assume, for the sake of this argument, that we get to the point where we say that equitable tolling is available. Why isn't it enough that the government affirmatively – I'm not suggesting that you meant to mislead him. Don't misunderstand me. But the effect of this language here saying that you must provide written notice or file an EOIR-33 form, why isn't that enough to – and then he does, in fact, provide the written notice. There's no question about that. He does it in a timely way. Why isn't that enough to satisfy his requirement? Because equitable tolling also requires that the non-citizen, the alien here, if we were to do this, has exercised reasonable diligence. But let me stop you for a second. The problem is that if you all had done what you were supposed to do, he would have received the notice, and he's already testified – not testified, but the record shows that he's homeless on the streets of Haiti without access to any other way to find out about this filing. So I'm just not understanding why that's not enough. Well, Your Honor, we respectfully want to point out that the record isn't exactly clear why Mr. Sonatus didn't receive notice. While he did testify, he was removed, and he was experiencing homelessness. In other filings before this Court, he didn't even contest timeliness. And then he noted that he was relying on family members to check. He was attempting to check. So this concept that he didn't get notice because he informed the board and the board made the administrative error doesn't exactly align with all the various statements he said. And I want to note that this is the exact reason why equitable tolling should not be applied for 1252b1, because these are various statements that are happening outside of the administrative record, which Congress did not intend. The petition for review was meant to be not a streamlined, but a fast track of judicial review of aliens and their removal order. Equitable tolling has never been applied to 1252b1. And while Riley and the Supreme Court in Santos-Zachariah noted that Stone is no longer applicable because it held it's a jurisdictional and a mandatory claims processing rule, there's nothing in those decisions to take away that Stone's language on how equitable tolling is not applicable is no longer valid and something that this Court shouldn't follow. And so we could spend hours discussing EYR's forms and whether or not they're misleading, but the issue here that this Court should and has to rely on is the fact that this is now a mandatory claims processing rule. If a party invokes it, which the government here has, this Court must enforce it and cannot go any further. I want to turn to one thing you said earlier in response to Judge Risenbaum, which was that there was another administrative path that he could have taken. Yes. Can you walk us through that, please? Sure. So that is specifically a motion to reissue. So as Judge Risenbaum mentioned, this is something that may happen at various times. People are removed to their home country. The correct address isn't appropriately with the agency. Well, non-citizens can specifically ask the Board of Immigration Appeals to reissue the order, which here would be the motion, the denial of the motion to reopen. And with that reissuance, the new deadline starts, and Mr. Sinatis would have then 30 days to file a timely petition for review with this Court. We believe that this is a more appropriate method than this Court now applying equitable tolling to 1252b1 because, again, it keeps it within the agency, have the agency review it. The agency would be able to look at Mr. Sinatis' claim stating that, you know, I told you multiple times that I moved. You didn't. I may not have filed OIA-33, but, you know, I never got notice of this. The Board can then choose to issue or not, and then he can timely appeal that choice, and this Court can then address it. And then we can review that decision as opposed to making first-line factual conclusions for ourselves. Is that the argument? Absolutely, because that would then confine it within an administrative record, which Congress intended these petitions to review of alien removability to be in one record. This Court does not have the ability to conduct fact-finding, and this Court could then review it. And what would be the scope of our review in that situation? Would we have to, let's say that you all found that the facts were exactly as he said, that he was homeless, that he couldn't, you know, that he had provided you all with written notice in the form of filings, and then you all determined that you were not going to reissue? Yes. Could we reverse that on appeal? Yes. We would point this Court to the Third Circuit's decision, and I am going to butcher this, JAGA versus Attorney General. There it held that a court could look at non-receipt and the Board's decision to deny that subject to abusive discretion. So this Court could look at it as the Board's determination not to reissue as an abusive discretion for all those various factors, looking to the fact that there maybe, say, was evidence that he moved. He would need to support that. It would need to be more than just what we have here. What is the statutory authority that supports the abusive discretion standard of review there? I do not have that off the top of my head, Your Honor. I believe the Third Circuit in that decision and others kind of treat it as, like, a motion to reopen, because in a way a motion to reissue is similar to a motion to reopen, because you're asking the agency to reopen it. And motions to reopen are well known, and of course I can't remember the statute, to be reviewed for abusive discretion. Actually, I do have that, but hang on. Do you have a sense of if he had filed such a motion, the motion to reissue, are those granted as a matter of course? I believe it is a case-by-case basis, Your Honor, but we have nothing in the record or my own personal knowledge that they are denied just outright. They are looked at depending on what is submitted. Again, it needs to be more than just, hey, I moved, I changed my address, you didn't send me the correct one. He would need to support that with more. But I think ultimately what's important here is that this court really shouldn't stray away from Riley. As Judge Grant noted, it could lead to a slap on the wrist from the Supreme Court. Riley, Santos-Zachariah, while they did hold that it is no longer jurisdictional, it's clear that it is a mandatory claims processing rule. And I will note there will be some situations where the government just declines to enforce the timeliness deadline. And Riley, for instance, as my friends on the other side noted, the government declined to raise an objection to that. However, here the government very quickly, I think within seven days, filed a motion for summary denial invoking that it's a mandatory claims processing rule, asked this court to enforce it. And just to clarify. But there is, you know, in fairness, it's one thing to invoke the 30-day rule when you've provided notice. It's something wholly different when the reason that the notice wasn't provided was, you know, an affirmative. And again, I don't mean to suggest it was intentional, but still, the effect. An affirmative misleading of the person by telling them you just need to provide written notice and they do so, but it's not in the form that you wanted. But you've told them, you've given them an option of written notice of any form. I mean, it seems like that is somewhat problematic. And, Your Honor, the government does recognize that. However, based on various factors, including the statute language itself, congressional intent, the federal rules of appellate procedure, and this type of incident was exactly addressed by Justice Alito in Riley, that these rules could be possibly unfair to the aliens. But that's just what we have here. The problem, though, is that there's affirmative lulling going on, right, by the government here. There's affirmative lulling in that it makes the person feel like they have complied with everything and they're going to receive the notice that they've done what needs to be done. I mean, so there's not a reason for them to continue to consult or to try to find out what happened in their specific case, at least not, you know, on a regular basis because they think that they've already provided the notice that you asked for. Well, Your Honor, we would respectfully disagree with that because, again, while Mr. Sonata stated here that he did inform the board, it is not clear that he did it in the proper manner. The board issued its decision. It's unclear whether he found out through family, friends, et cetera. But all of this aside, this is exactly why tolling should not be applicable. Congress did not intend for this court to kind of jump through the hoops to remedy these errors. It should be for the agency and Mr. Sonata to take that action and seek a reissuance versus here upending Stone's precedent on equitable tolling, being contrary to Riley and Santos-Zacharias. And we would ask that this court follow the Fifth Circuit's recent decision in Lau, which confirms that it's mandatory, although equitable tolling – Sorry, I know you're running out of time. I don't want to ask this. Is there any deadline for seeking a motion to reissue? No, Your Honor. Or filing a motion to reissue? No. It's similar to the concept of a motion to reopen, although there are timelets for a motion to reopen. But you would just need to explain similarly why you filed it at a certain time and likely show the diligence that you went through with this. Got it. Thank you. All right. Thank you very much, Ms. Groff. And, Mr. Winokur, you have three minutes. Sorry, four minutes. Thank you, Your Honors. I'd like to pick up on the issue of whether the deadline should be tolled and the issue of alternative remedies. First off, this is not salient to the issue of whether Mr. Sinaitis has satisfied the extraordinary circumstances and reasonable diligence elements. As a pro se petitioner who was homeless in Haiti, Mr. Sinaitis could not have been expected to pursue every possible alternative remedy. I wasn't going to bring this up, but perhaps we've opened the door to it. I will say that although the briefs that were filed on his behalf were not nearly as good as those filed by you and your colleagues, they also did not appear to be filed by a homeless man who lives in Haiti. So I have great concerns about briefs being filed that claim to be pro se, that to me seem pretty clearly to be written by a lawyer or someone playing one on TV right down to the misspelling of the client's name. So why should we extend any of the grace that we extend to pro se litigants for someone who apparently had someone working on his behalf on these documents? Your Honor, I cannot speak to the filings, but in this case Mr. Sinaitis did exercise reasonable diligence. After he found out about the board's denial of his decision, which was a day after the deadline, he prepared his petition for review within three days and mailed it only eight days late. So in this case, Mr. Sinaitis satisfies the reasonable diligence element. He satisfies the extraordinary circumstances element because he complied, as Judge Rosenbaum pointed out, the standard is to provide written notice. He provided notice in his brief, in his filings, seven times, and yet the board mailed it to the one place where they knew it would not reach him, which is the Baker County Jail, and they knew that Mr. Sinaitis had already been deported. So we believe that there's a strong case for equitable tolling here, but that raises the issue of whether 1252b1 is subject to equitable tolling. The government points out that this is a mandatory claims processing rule. However, the government has it backwards because the starting point of the analysis is not whether 1252b1 is mandatory, but rather whether Congress has rebutted the presumption in favor of equitable tolling. Mandatoriness does not answer this question, as shown by Harrow, which is cited by the government in footnote three in its reply brief as an example of a mandatory claims processing rule. And in that case, the Supreme Court explained that although the deadline was framed in mandatory terms, the presumption in favor of equitable tolling still applied and that overcoming this presumption would be a high bar. Further, the government also cites Stone, but Stone does not help the government because that case was decided before Riley, and equitable tolling in that case was not the ultimate issue. In Stone, the issue was about calculating the deadline under the statute and whether filing a motion for reconsideration stops the clock. And the court in that case observed in a passage that 1252b1 was not subject to equitable tolling, but it appeared to be relying on the jurisdictional aspect, and we know after Riley that this is a non-jurisdictional deadline. Further, the contextual features the government points to also don't rebut the presumption. For instance, we know that FRAP 26b is not enough because in Harrow, the same deadline, 26b, was applicable to it, and yet the presumption still applied. Finally, I'd like to address the crime of violence issue. I'd just like to clarify that at the time that Mr. Sinaitis was convicted, specific intent was not the standard. Lavin was not a holding in that case, and therefore that was not the standard. And unless there's any further questions, I would like this court to find that the deadline should be tolled and that the crime is not removable. Thank you. All right. Thank you very much. And we want to thank the University of Georgia and Mr. Birch, Mr. Sebring, and Mr. Winokur for accepting this appointment and doing a very capable job. And thank you also, Ms. Groff, for also representing your client very capably. All right.